Henry Van Aernam, Respondent, v. George Bleistein, as President, etc., Appellant.

In an action brought against defendant as president of a company named, the complaint alleged that said company was a joint-stock company or association duly organized under the laws of this State. Plaintiff put in evidence a stipulation signed by defendant's attorney, admitting for the purposes of the trial that said company was a joint-stock company as alleged in the complaint, and that defendant was its president at the time of the commencement of the action. *Held,* that the fair construction of the stipulation, taking it in connection with the complaint, and having reference to the statutes in relation to joint-stock companies (Chap. 258, Laws of 1849; chap. 455, Laws of 1851; chap. 153, Laws of 1853; chap. 245, Laws of 1854) is that it was intended to concede that the action was in proper form, as authorized by the act of 1849 (§ 1, chap. 258, Laws of 1849), against the defendant as president of the company, and that, therefore, a motion for a nonsuit on the ground that it did not appear that the company was a joint-stock company, consisting of seven or more members, was properly denied.

An action for libel is maintainable against such a joint-stock company, which publishes a newspaper in which the libel is contained.

*It seems* the officers of the company, or the publishers or editors employed by it, have the same power, when acting within the scope of their authority, to bind the company and all the associates, which an ordinary partner has to bind the firm and his copartners.

In such an action the alleged libelous article, which was published at a time when plaintiff was a candidate for an office, charged him with mal and corrupt conduct as commissioner of pensions, which office he had previously held. At the conclusion of the trial defendant's counsel stated that it was not claimed on the part of the defense that there was any thing wrong in plaintiff's conduct in the pension office. Plaintiff's counsel thereupon rested and the court charged that there must be a verdict for plaintiff for nominal damages at least. Defendant had previously moved for a nonsuit, but not upon the ground that there was no evidence of malice. Defendant's counsel excepted to the charge, and sought to sustain the exception here upon the ground that the question of malice should have been left to the jury. *Held,* that the objection came too late; that if defendant had desired to go to the jury on that point, he should have made the request or should have stated the ground of exception to the charge at a time when it would have been in the power of the court to correct it, in the respect complained of.

(Argued February 10, 1886; decided June 1, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the fifth judicial department, entered upon an order made April 5, 1884, which affirmed a judgment in favor of plaintiff, entered upon a verdict. (Reported below, *sub nomine Van Aernam* v. *McCune,* 32 Hun, 316.)

This was an action for libel brought against the defendant as president of the "Courier Company," which company, the complaint alleged, "was and now is a joint-stock company or association duly formed and organized under and by virtue of the laws of the State of New York," and engaged in the publication of a newspaper in which the alleged libelous articles were published.

The facts so far as material are stated in the opinion.

*John G. Milburn* for appellant. The motion for a nonsuit should have been granted, because the plaintiff failed to prove that the Courier Company consisted of seven or more shareholders or associates. (*Austin* v. *Searing,* 16 N. Y. 112; Lind.

on Part. 2–14; 2 id. 1084; Laws of 1849, chap. 258, § 5; Laws of 1854, chap. 245, § 3; *Whetherhead* v. *Allen*, 4 Ct. App. Dec. 628; *Bk.* v. *Vanderwisher*, 74 N. Y. 234; *Tiffany* v. *Williams*, 10 Abb. Pr. 204; *Tibbetts* v. *Blood*, 24 Barb. 650.) It was error to charge the jury that there must be a verdict in favor of the plaintiff for nominal damages at least. The question of malice should have been left to the jury as essential to the liability of the defendant. (*Hamilton* v. *Eno*, 81 N. Y. 116.)

*C. D. Van Aernam* for respondent. Although the pleader does not explicitly say that the company consists of seven or more stockholders, he has, by what he does allege, brought the defendant clearly within the acts relating to such association. (Laws of 1849, chap. 258; Laws of 1851, chap. 455; *Lorillard* v. *Clyde*, 86 N. Y. 384; Laws of 1875, chap. 508.) Defendant, so far as this question is concerned, is a corporation. (Laws of 1849 and 1851, *supra;* Laws of 1854, chap. 245; Laws of 1867, chap. 289; *Woodbury* v. *Merch. U. Ex. Co.*, 50 Barb. 157; *Wescott* v. *Fargo*, 61 N. Y. 542.) Defendant has waived all objection and submitted himself and those he represents to the jurisdiction of the court by appearing generally in the cause. (*McCormick* v. *Penn. C. R. R. Co.*, 49 N. Y. 303; Code of Civ. Pro., §§ 488, 489, 499; *White* v. *Spencer*, 14 N. Y. 247; *Reynolds* v. *Loundsbury*, 6 Hill, 534; *Howell* v. *Mills*, 7 Sandf. 194; 56 N. Y. 226; *Trustees of C. Academy* v. *McKechnie*, 90 id. 630.) The Courier Company in its collective capacity is amenable to an action for libel. (Townshend on Slander and Libel, §§ 119, 265; *Thomas* v. *Rumsey*, 6 Johns. 26; Code of Civ. Pro., § 3347, subd. 11; *L. W. & B. R. R. Co.* v. *Quigley*, 21 How. [U. S.] 202; *Whitfield* v. *S. E. R. Co.*, 1 E. B. & E. 115; *Samuels* v. *Ev. M. Ass.*, 9 Hun, 288; *S. C.*, 75 N. Y. 604; *Dodge* v. *Bradstreet Co.*, 59 How. 104.) The allegation as to the membership of seven or more, claimed to be essentially necessary, is a mere averment of the capacity of the defendant, and is no part of the cause of action. (*Fox* v. *Erie Preserving Co.*, 93 N. Y. 54; *Woodbury* v. *M. Union*,

50 Barb. 157; *Westcott* v. *Fargo*, 61 N. Y. 542; *Sandford*
v. *Sup'rs of N. Y.*, 15 How. 172.) The court properly re-
jected defendant's offer to show the publication in other news-
papers of libelous matter similar to that which he had pub-
lished; it was incompetent for any purpose. (*Matson* v.
*Buck*, 5 Cow. 499; *Cole* v. *Perry*, 8 id. 213; *Inman* v. *Foster*,
8 Wend. 602; *Kennedy* v. *Gifford*, 19 id. 296; *Hotchkiss* v.
*Oliphant*, 2 Hill, 510; *Sandford* v. *Bennett*, 24 N. Y. 20;
*Daly* v. *Byrne*, 77 id. 182; *Willover* v. *Hill*, 72 id. 36.)
There was nothing in the case tending to impart to the defam-
atory matter the character of privileged communications, and
the court in effect so determined, as was both its right and its
duty. (*Hamilton* v. *Eno*, 81 N. Y. 116.)

RAPALLO, J. The only point made on the part of the ap-
pellant on the trial of this action was that the action could not be
maintained against the defendant as president of the Courier
Company.

Prior to 1849 all the members of an unincorporated joint-stock
company or association were necessary parties to an action by
or against such company or association, whatever the number
of its members might be. (2 Lindl. on Part. 1084.) Such an
association could not sue in the name of any officer of the asso-
ciation or in the name of its trustees.

By the Laws of 1849 (Chap. 258, § 1) it was provided that
any joint-stock company or association, *consisting of seven or
more shareholders or associates*, might sue or be sued in the
name of the president or treasurer, for the time being, of such
joint-stock company or association, and that suits so prosecuted
should have the same effect on the joint rights or property of
the company as if prosecuted in the names of all the share-
holders or associates. The only manner in which the question
was raised in this case was by motion for nonsuit at the trial.

The plaintiff put in evidence a stipulation signed by the
defendant's attorneys, whereby it was admitted, for the purposes
of the trial, that the Courier Company was a joint-stock asso-
ciation as alleged in the complaint, and that the defendant was

its president at the time of the commencement of this action, and that said company published the Buffalo *Courier* and had done so for five years last past.

The defendant now claims that its stipulation was ineffectual, as it does not state that the company consisted of seven or more shareholders or associates, but only that it was a joint-stock association as alleged in the complaint; and that by reference to the complaint it appears that the allegation therein was that it was a joint-stock company or association, duly formed and organized and then existing under and by virtue of the laws of the State of New York, without stating the number of associates.

We think that the fair construction of the stipulation is that it was intended to concede that the action was brought in proper form against the defendant as president of the association, and to relieve the plaintiff from the necessity of producing proof at the trial of the organization of the association, and to be so understood by the counsel for the plaintiff. If not intended to have this effect it was of no avail for any purpose, as it would still have left the plaintiff subject to the necessity of preparing himself with proof of the organization, for he could not prove that the association consisted of seven or more members without proving the organization, and the membership of all the associates. To attach to it the silent reservation now claimed, and which could not have been contemplated by the parties, would make it deceptive and misleading.

The stipulation, read in connection with the complaint, was an admission that the defendant was a joint-stock company or association duly formed and organized and then existing under and by virtue of the laws of the State of New York. This must be deemed to have reference to the statutes of this State, and when it is considered that the act of 1849, under which this action was brought, and all other statutes of this State relating to joint-stock companies or associations, refer to companies or associations consisting of seven or more shareholders or associates (Laws of 1851, chap. 455; 1853, chap. 153; 1854,

chap. 245), and that there are no statutes recognizing or referring to joint-stock companies composed of a smaller number of members, it is quite evident that such a company as is referred to in the statutes was intended.

The only other point raised on the motion for a nonsuit was that the action was not of such a nature that it could be maintained against a joint-stock association in the name of its president or treasurer.

Conceding that the Courier Company is not a corporation, but a partnership with some of the powers of a corporation, it is admitted that the association published the paper in which the libel was contained, and we can see no reason why it, and all its members, should not be responsible for a libel published by their authority. The officers of the unincorporated company, or the publishers or editors employed by it, have the same power, when acting within the scope of their authority, to bind the company and all the associates which an ordinary partner or an agent of a partnership has to bind the firm and the copartners.

A further point was raised on the argument of the appeal in this court, which does not appear to have been raised upon the trial, viz. : That the publication complained of was privileged, and there was no proof of actual malice. The plaintiff was, at the time of the publication, a candidate for the office of representative in Congress. He had, at a former period, held the office of commissioner of pensions, and the publication of the defendant complained of, consisted of charges of mal and corrupt conduct of the plaintiff as such commissioner. These charges had been the subject of investigation by a committee of the house, and the proceedings of the committee were before the defendant and were largely drawn upon in the various articles which it published and which are claimed to be libelous, and parts of the testimony were referred to which tended to establish the charge of malconduct, while the plaintiff claims that the editor of the defendant who wrote the articles did not refer to the parts of the testimony and proceedings which exculpated him.

At the conclusion of the trial of this action, the counsel for the defendant stated to the court that it was not claimed on the part of the defense that there was any thing wrong in Dr. Van Aernam's conduct in the pension office, and the plaintiff's counsel then stated that upon the defendant's statement the plaintiff would rest, and thereupon the court charged the jury that there must be a verdict for the plaintiff for nominal damages at least. To this charge the defendant's counsel excepted, and the jury rendered a verdict for the plaintiff for $2,000 damages.

The defendant's counsel now raises the point that the charge was erroneous because the judge should have submitted the question of malice to the jury.

We think this objection comes too late. There was no request to submit that question to the jury, nor was it claimed on the motion for a nonsuit that there was no evidence of malice. The nonsuit was asked for on different grounds. If the defendant desired to go to the jury on that specific point he should have made the request, or should have stated the ground of exception to the charge at a time when it would have been in the power of the court to correct it in the respect complained of. The court evidently assumed to decide, upon the evidence, that the publications were not fair criticisms on the official conduct of the plaintiff, and, therefore, that they were not privileged.

Without deciding whether or not, under the evidence in the case, it was within the province of the court to pass upon that question, we are of opinion that if the defendant deemed himself entitled to have it left to the jury, he should have made the claim at the trial.

The judgment should be affirmed.

All concur, except RUGER, Ch. J., not voting.

Judgment affirmed.