Wilfred A. Waltemade, J.
Plaintiff, the Anti-Defamation League of B’nai B’rith, has moved for an injunction pendente lite, restraining the defendants, American Italian Anti-Defamation League, Inc., and others from using the words ‘ ‘ Anti-Defamation League ” in the corporate name.
The defendants have cross-moved to dismiss the complaint pursuant to CPLB 3211 upon the ground it fails to state a cause of action because the plaintiff lacks the legal capacity to sue for the reason that it is a foreign corporation and has not filed a certificate of doing business with the Secretary of State of the State of New York as required by law. Because of defendants’ cross motion, plaintiff invokes the provisions of CPLB 3211 (subd. [c]) and asks the court, as alternative relief, to grant summary judgment on its complaint for a permanent injunction against the defendants.
An orderly disposition of this matter dictates that the court first determine defendants’ cross motion. It is undisputed that plaintiff is a foreign corporation which was incorporated on December 26,1946 in Washington, District of Columbia, pursuant to the provisions of chapter 6 of title 29 of the District of Columbia Code. It is unquestioned that plaintiff’s national offices have been located in the City of New York for the past 20 years and that it conducts its activities from this office. In urging the motion to dismiss, defendants rely upon the provisions of subdivision (a) of section 1301 and section 1312 of the Business Corporation Law and the case of People v. Jewish Consumptives’ Relief Soc. (196 Misc. 579). The plaintiff, in resisting defendants’ motion, contends that it is not a foreign corporation within the purview of the cited sections.
Subdivision (a) of section 1301 provides that no foreign corporation shall do business in this State unless such activity has been authorized. Section 1312 states that a foreign corporation doing business in this State shall not maintain any action or proceeding in this State unless and until such corporation has been authorized to do business in this State. Neither of these two sections defines a “ foreign corporation ”. However, that definition is found in section 102 of the Business Corporation Law which provides:
‘ ‘ 102. Definitions
“ (a) As used in this chapter, unless the contest otherwise requires, the term: * * *
“ (7) ‘ Foreign corporation ’ means a corporation for profit formed under laws other than the statutes of this state, for a purpose or purposes for which a corporation may be formed under this chapter ”,
*832 It is thus obvious that the language of subdivision (a) of section 1301 and of section 1312 is limited strictly to foreign corporations organized for profit. Admittedly, the plaintiff corporation is a nonprofit organization. Its certificate of incorporation sets forth that it was being formed “ not for pecuniary profit ”, and its corporate purposes “ To advance good-will and proper understanding between American groups; to preserve and to translate into greater effectiveness the ideals of American democracy; to eliminate defamation of Jews and to counteract un-American and ánti-democratic activities through a broad educational program ” are obviously not those of a corporation organized for profit.
The court concludes that since the plaintiff is a nonprofit corporation, the provisions of subdivision (a) of section 1301 and of section 1312 are not applicable to it. People v. Jewish Consumptives’ Relief Soc. (196 Misc. 579, supra) cited by defendants, is not relevant to the proceeding at bar. That' case stands for the proposition that a foreign nonprofit corporation authorized to do business in this State is subject to injunction proceedings brought by the Attorney-Greneral to restrain it from engaging in business not authorised by its certificate. There are no allegations that either the plaintiff or the defendants are acting with impropriety in pursuing their idealistic and important endeavors.
Plaintiff has conducted its activities under its present name combating prejudice, bigotry and racial discrimination for the past 54 years, first as an unincorporated association and since 1946 as a corporate entity. The expansion of its labors is attested by the constant increase in its annual budgets from its founding to date.. Its first budget in 1913 totalled the modest sum of $2,000, and the 1966 annual budget amounted to $4,200,000. The plaintiff engages in a broad, positive and educational program in discharge of its corporate purposes.
Plaintiff has published and distributed thousands of pamphlets, leaflets, books and periodicals to the general public and has created many full length and short subject motion picture films and documentaries. It has made available to the general public a library which is reported to be the largest in the world of printed, filmed and taped material, all on the subject of racial and religious bigotry, prejudices and discrimination. Six national periodicals are published by the plaintiff. One of these entitled the ADL Bulletin, had a net paid circulation of 168,476 as of December, 1966. Its activities are sponsored through 28 regional offices and a professional staff of some 300 persons. Public *833 acceptance of the plaintiff’s programs is demonstrated by the receipt of contributions from 18,447 individuals in 1966.
Plaintiff claims that as a result of all of its activities in its chosen field over the past 54 years, the words “ Anti-Defamation League ’ ’ have acquired a secondary meaning to the extent that generally in the minds of the public, plaintiff is identified as being the “ Anti-Defamation League ” rather than the “Anti-Defamation League of B’nai B’rith ”. Therefore, the plaintiff contends that the defendants’ use of the words “Anti-Defamation League ” in the corporate title is an illegal exploitation and appropriation of plaintiff’s basic identifying corporate name, and a usurpation of plaintiff’s goodwill and property rights.
The defendant American Italian Anti-Defamation League, Inc., was incorporated in March, 1966 under the laws of the State of New York. Its basic corporate purpose is to preserve, protect and perpetuate the record of the contributions of Americans of Italian ancestry to American life and culture; to combat discrimination, defamation and slurs against Americans of Italian descent which result from the fears and smears created either by design or by ignorance; to make certain that Americans of Italian background are regarded as equals in the American community by virtue of their talents, capabilities and their devotion and loyalty to the principles that guide our nation (see Exhibit A attached to affidavit of Joseph Jordan, sworn to June 9, 1967, submitted in opposition to this motion).
The defendants urge that the words “Anti-Defamation League ” are merely descriptive of the aims or purposes of the organizations and, therefore, not subject to the exclusive use by any one group or corporation, and further that its corporate title is not so similar to plaintiff’s name as to mislead, deceive or confuse the general public.
As a general rule, a corporation is not entitled to the exclusive use of words in its corporate title which are in common usage or are merely descriptive of the corporate activities (Wholesale Serv. Supply Corp. v. Wholesale Bldg. Materials Corp., 280 App. Div. 189, affd. 304 N. Y. 854). It is obvious that the words ‘ ‘ Anti ”, “ Defamation ’ ’ and 1 ‘ League ’ ’ are common words, and when combined, are descriptive of an aim or purpose. However, descriptive words or words of common speech, may, by reason of their use and association with a particular enterprise, acquire a special significance with the general public or a segment thereof, and may become generally known and referred to as the title or name for such enterprise. This special significance acquired by a title or name is known as a “ secondary meaning ” (I Nims, Unfair Competition and Trade *834 Marks [4th ed.], § 37). Where an enterprise has a title or name well established in the public mind, the owner has definite rights and remedies against another who unfairly uses such title or name and thereby deceives or confuses the public (Ball v. United Artists Corp., 13 A D 2d 133, 137). A factual issue is thus raised as to whether the combined words ‘ ‘ Anti-Defamation League ” have acquired a secondary meaning associated with the plaintiff, so as to entitle it to property right protection in order that the public neither be confused nor mislead (Ball v. United Artists Corp., supra).
The plaintiff’s motion for summary judgment should not be granted where there is a clear triable issue or where there is doubt as to its existence (Falk v. Goodman, 7 N Y 2d 87, 91), or even where the issue presented is debatable (Stone v. Goodson, 8 N Y 2d 8, 12). The court views the record in this application as raising issues of fact which require resolution at a trial. Accordingly, plaintiff’s application for summary judgment in accordance with the provisions of CPLR 3211 (subd. [a]) is denied.
The granting of a preliminary or temporary injunction rests largely in the discretion of the court (Holton v. Board of Supervisors, 245 App. Div. 144). Despite the tendency to discountenance and discourage pleas for temporary injunction, the courts will not hesitate to grant such relief where the facts of a case so dictate. This is so even where the effect thereof is to grant the plaintiff the same relief which may ultimately be granted after a trial on the merits (Graham v. Board of Supervisors, 49 Misc 2d 459, mod. on other grounds, 25 A D 2d 250). It has been held that in deciding the question of whether or not an injunction pendente lite should issue, the courts must consider whether the plaintiff has demonstrated a meritorious cause of action, the effect of a grant or denial of a temporary injunction may have on each of the litigants, and the necessity for its issuance (Swarts v. Board of Educ., 42 Misc 2d 761; Graham v. Board of Supervisors, supra).
In the case at bar, the complaint and the affidavit and exhibits submitted in support thereof, clearly indicate the existence of a meritorious cause of action. Over the past five decades, plaintiff’s work in the field of combating racial and religious discrimination, prejudice and bigotry, has received world-wide publicity and public acclaim. It has expended millions of dollars in furtherance of its aims and purposes. It has publicized its work not only under its full and complete corporate title, but also under the name of “ Anti-Defamation League ” as well as the initials “ ADL ”. Surely, it cannot be said, with absolute *835 certainty and the mark of finality, that plaintiff’s work over the past 54 years has not engendered for it a measure of goodwill in its corporate name which may be worthy of judicial protection.
Plaintiff alleges that the use of the words ‘ ‘ Anti-Defamation League ” in the corporate names of both plaintiff and defendant has created confusion in the public mind. Citing as examples, two misdirected letters and a number of misdirected telephone calls, the plaintiff contends that there is no assurance that instances of confusion may not be repeated and compounded to such an extent, that irreparable damage may be suffered by the plaintiff if a preliminary injunction were not granted. In any event, injunctions have been issued against the use of similar names even in the absence of a threat of confusion (Tiffany & Co. v. Tiffany Prods., 147 Misc. 679, affd. 237 App. Div. 801, affd. 262 N. Y. 482). Also, at this stage of the proceedings, the defendant would suffer minimal inconvenience if temporarily restrained from the use of “Anti-Defamation League ” in its corporate title. The granting of a temporary injunction will not impair corporate defendant’s activities in pursuing the laudable purposes for which it was created.
It appears from the record in this proceeding that the defendant had, prior to the commencement of this action, undertaken and planned an event to promote its aims and goals. Furthermore, at the hearing, the corporate defendant advised the court that it had already made contractual commitments and had expended large sums of money to publicize this event. Under these circumstances, the court will permit the defendant to use its full corporate name solely for this one event and function, scheduled to be held on October 19, 1967.
The plaintiff and corporate defendant, both of whom number among their directors, officers and members, many illustrious citizens, follow parallel paths in pursuing their ultimate purposes towards the eventual eradication of racial or religious discrimination, bigotry and prejudice from American life. The two organizations, which are parties to this litigation, are not antagonistic nor adverse to each others ’ goals, which are singularly synonymous. This battle belongs, not to any one or two segments of our people, but to all. A division of those engaged in this struggle dilutes the power and impact of the forces joined against these social ills. What is needed here is unity — not division. All Americans of goodwill should unite to combat prejudice, discrimination, bigotry and defamation. Acceptance of one another, more than mere tolerance of each other, is the goal which all must seek and attain.
*836 A reading of the supporting affidavits and a consideration of some of the arguments advanced to date, leave the impression that a clash of some of the personalities within the two organizations is involved in this litigation, and if continued, could severely impede the important work, yet undone, in the eradication of bias and prejudice which still exists. It is in the spirit of encouraging the goals of both organizations that the court importunes the parties in this litigation to resume their efforts to amicably adjust their differences as suggested by this court, prior to a trial of the issues raised by the pleadings herein.
Where acrimony is absent and harmony of purpose prevails, lofty objectives should transcend corporate labels.
Accordingly, the court is constrained to grant plaintiff’s application for a preliminary injunction as herein indicated.
The court is of the opinion that in the interests of justice and the parties, an early trial should be had to resolve the issues in the action. The defendant American Italian Anti-Defamation League, Inc., has requested an early. trial, and the plaintiff, Anti-Defamation League of B ’nai B ’rith, has indicated the need for a speedy determination of the issues. The court will receive suggestions from counsel on the amount of the undertaking to be provided by the plaintiff pursuant to the provisions of CPLR 6312 (subd. [b]).
Settle order providing for an immediate trial.